# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

14 Electronic Devices Held in the Possession of the FBI at 7747 Clyo Road, Centerville, Ohio

)
)
)
)
)
)

Case No.

3:19 mj 662

FILED
RICHARD W. NAGEL
CLERK OF COURT
2019 NOV 15  PM 3: 14

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attachment C | See Attachment C |

The application is based on these facts:

Attached Affidavit of Robert Buzzard

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert M. Buzzard*
*Applicant's signature*

Robert Buzzard, SA of the FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-15-19

*Sharon L. Ovington*
*Judge's signature*

City and state: Dayton, Ohio

Sharon Ovington, US Magistrate Judge
*Printed name and title*

I, Robert M. Buzzard, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—the listed electronic devices in Paragraph 4(a)-(n) —which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since January of 2002. I am currently assigned to the Cincinnati Division, Dayton Resident Agency. As such, I am charged with investigating crimes against the United States of America, including but not limited to violations of Title 18 and Title 21 of the United States Code (U.S.C.). I have received training in drug trafficking investigations and participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, the execution of search warrants, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I am familiar with federal drug laws, and am aware that it is a violation of Title 21, U.S.C., Sections 841(a)(l) and 846 to distribute and possess with intent to distribute controlled substances, as well as to conspire to do the same.  I am also aware though my training and experience that drug traffickers commonly use cellular telephones and electronic devices to facilitate their drug trafficking activities/crimes.

3.     Along with other agents, officers, and law enforcement officials from the DEA, ATF, and Dayton Police Department, I am currently involved in the investigation of drug trafficking and firearms offenses committed by Nathan GODDARD, Cahke CORTNER, Lionel COMBS III, and Courtney ALLEN – including violations of: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime) (hereinafter and collectively "Subject Offenses").  I have personally participated in this investigation and have spoken to, as well as received information from, other agents and investigators participating in this matter.  For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge.   This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched are fourteen electronic devices, hereinafter listed as **DEVICE-1** through **DEVICE-14**.  The Devices are currently located at the Dayton Resident Office of the FBI, 7747 Clyo Rd., Centerville, Ohio and further described as follows:

   a.  **DEVICE-1:** Apple iPad, Model A1954, Serial Number GG7YK2P1JMXJ, contained within an Otter Box protective case.

2

b. **DEVICE-2:**  Apple iPhone, Model A1549, IMEI: 355790074427672, contained in black protective case.

c. **DEVICE-3:**  Samsung Galaxy Note 8 cellular telephone, Serial Number R38JA0LTZSB, IMEI: 358502083742034, with protective Pelican case.

d. **DEVICE-4:**  Apple iPhone, black in color, contained in a black Otter Box case.

e. **DEVICE-5:**  Apple iPhone, black in color, Model A1660, FCC ID: BCGE3085A, IC: 579C-E3085A, contained in blue/black protective case.

f. **DEVICE-6:**  Apple iPhone, black in color, Model A1661, FCC ID: BCGE3087A, IC: 579C-E3087A, contained in blue protective case.

g. **DEVICE-7:**  Apple iPhone, yellow in color, contained in clear protective case.

h. **DEVICE-8:**  Apple iPhone, pink in color, Model A1662, IMEI: 353790080191496, contained in black/gray protective case.

i. **DEVICE-9:**  Apple iPhone, black in color, contained in black protective case.

j. **DEVICE-10:**  Apple iPhone, pink in color, contained in black Otter Box protective case.

k. **DEVICE-11:**  Apple iPhone, gray/black in color, Model A1453, IMEI: 352000068350267.

l. **DEVICE-12:**  LG black flip cellular telephone, Model LG-VN170, Serial Number 607CQDG1826650.

3

     m. **DEVICE-13:** Apple iPhone, pink/white in color, contained in a black protective case.

     n. **DEVICE-14:** Samsung Galaxy Note 8 cellular telephone, IMEI: 353639090564616, contained in black protective case.

(collectively, the "Subject Devices"). The Subject Devices are described in Attachment A, which is incorporated by reference.

5.     I believe that there is probable cause to believe that evidence of the Subject Offenses will be found on the Subject Devices. The applied-for warrant would authorize the forensic examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

6.     Between mid-July and late October 2019, members of the DEA Dayton Resident Office conducted an investigation into a Dayton, Ohio based fentanyl trafficking organization. During that investigation, investigators developed a Cooperating Defendant (hereinafter referred to as CD). CD provided information to members of the DEA investigative team for possible consideration in an on-going drug trafficking investigation.

7.     During subsequent interviews, CD identified Nathan GODDARD as CD's source of supply for illegal narcotics. CD estimated she/he obtained approximately one pound of marijuana from GODDARD on or about November 3, 2019 inside a residence at 1454 Ruskin Rd., Dayton, Ohio. During that transaction, CD also observed approximately ten kilograms of suspected drugs present in the basement of the residence. GODDARD informed CD the ten

4

kilograms of suspected drugs were fentanyl. On November 4, 2019, DEA investigators monitored a cellular telephone call between CD and GODDARD. CD called GODDARD at cellular telephone number 704-497-3706. During the conversation, CD and GODDARD discussed the prior purchase of marijuana on November 3, 2019 and GODDARD showing CD the kilograms of suspected fentanyl. CD asked GODDARD for the purchase price for one kilogram of fentanyl and GODDARD indicated $60,000. CD and GODDARD agreed to communicate at a later time to arrange for the purchase of fentanyl.

8.      CD further explained to investigators there were two additional individuals inside the residence at 1454 Ruskin Rd. with GODDARD when the drug transaction occurred on November 3, 2019. The two individuals were later identified by the investigative team as Lionel COMBS III and Cahke CORTNER. CD explained COMBS and CORTNER witnessed the marijuana transaction on November 3, 2019 and reported the kilograms of suspected fentanyl were laying out in the open for everyone in the basement to see (including COMBS and CORTNER). In addition, CD observed CORTNER and GODDARD in possession of similar firearms during and in relation to the narcotics transaction. CD described CORTNER appeared to be acting as an enforcer or body guard for GODDARD during the marijuana transaction.

9.      On November 4, 2019, DEA Special Agent Charles Vill obtained a search warrant for the residence at 1454 Ruskin Rd., Dayton, Ohio authorized by U.S. Magistrate Judge Sharon L. Ovington, Southern District of Ohio. The search warrant authorized the seizure of contraband (to include illegal narcotics), U.S. currency, firearms/ammunition, electronic devices (to include cellular telephones and computers), and other items associated with drug trafficking activities.

10.     At approximately 6:50PM, on November 4, 2019, members of the DEA investigative team executed the federal search warrant at 1454 Ruskin Rd.  Upon lawful entry into the residence, DEA Task Force Officer (TFO) Jorge Delrio was shot in the face by GODDARD as TFO Delrio descended down a stairway into the basement.  Following the shooting, GODDARD, CORTNER, COMBS, and Courtney ALLEN were detained by DEA officers in the basement.

11.     During a subsequent search of the residence, law enforcement officers located and seized pounds of marijuana, more than six kilograms of cocaine, more than four kilograms of fentanyl, over $40,000 in U.S. currency, the firearm GODDARD used to shoot TFO Delrio, a similar firearm possessed by CORTNER at the time of the search warrant, and a third firearm from the basement.  Additionally, law enforcement officers located and seized the fourteen listed Subject Devices from the residence.  Based on my training and experience, I know the amount of narcotics seized from the residence is indicative of a large-scale drug trafficking operation.  I also know that, given the amount of drugs found at the location and indicia of drug trafficking throughout the house – including, for instance, a digital scale and cash in the upstairs of the residence, I believe that the men detained at the Ruskin residence where using this location as a drug premises.   I also know that COMBS rented the Ruskin residence; in a post-Miranda interview, COMBS confirmed that he knew GODDARD was storing large quantities of marijuana and money at the residence.

12.     I also believe that, given the amount of drugs seized from the residence, the men were not first participants in the drug trade.  (Indeed, GODDARD as a prior federal conviction for drug trafficking).  Based on my training and experience, I know that it often takes an

extended period of time for individuals to gain trust from sources of supply to obtain that quantity of narcotics. (The drugs seized had street values in the hundreds of thousands of dollars). In short, based on my training and experience, this was not an isolated incident; rather, the men likely had been trafficking drugs for months prior to this incident.

13.     Based on training and experience, your Affiant knows that drug traffickers frequently use wireless/cellular phones to carry out their activities. For instance, as described above, the CD communicated with GODDARD via cellular telephone. Drug dealers use cellular phones to communicate with customers, their associates, and their suppliers. It is often common for drug traffickers to have multiple phones because certain phones may be used only for certain purposes. For instance, a trafficker may use one phone just to speak to his supplier, while using a different phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the phones and his associates. Traffickers commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little to no identifying information to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number.

14.     Your Affiant also knows that traffickers commonly text message each other or their customers, such as meeting locations, prices, and other information needed to carry out the sale of drugs (sometimes in code) and do so using cellular telephones, smartphones and smart devices, such as tablets. They commonly store phone numbers for their associates and customers in the electronic phone book/contacts list, often under alias or code names. Your Affiant knows that traffickers, using digital cameras located on their cellular phone or other electronic devices,

will sometimes use these devices to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on, and transmitted from, these electronic devices. Information can also be downloaded from the internet onto the cellular phone or smart devices, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs. Call data, such as missed calls, received calls, or dialed calls are often electronically stored in the cellular phone. The information electronically stored on a phone can also be evidence of who possessed or used a cellular phone at a given time, can contain direct evidence of drug trafficking acts, and can help identify drug trafficking locations or associates through GPS data. Affiant is aware that there are tools to extract electronic data from a cellular phone so that law enforcement can review it for items of evidentiary value. I also know that drug dealers use applications on Smart Phones or Devices such as an I-Pad to communicate in the manner described above with customers, suppliers and associates.

15.     I also know that drug traffickers often threaten violence or use of force against their rivals as well as customers who, for instance, may owe them money. In doing so, drug traffickers often use electronic devices such as cellular telephones, smartphones, tablets, and the like, to send communications referencing violence, use or possession of firearms, or threats.

16.     In this modern era, individuals also use smart telephones and smart devices to logon to online banking platforms. I know that drug traffickers often use banking services to transmit money to their domestic and international suppliers.

17.     Based on my knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time.   Similarly, things that have

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. The Subject Devices are currently in the lawful possession of the Federal Bureau of Investigation. They came into the FBI's possession on November 8, 2019 after being seized pursuant to authorized federal and state search warrants. Therefore, while the FBI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws. Given the location from which they were seized, the Subject Devices likely contain the information and evidence described above.

19. The Subject Devices are currently in storage at the FBI Dayton Resident Agency, 7747 Clyo Rd., Dayton, Ohio. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

9

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets

10

function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that the Subject Devices have capabilities that allow them to serve in part as wireless telephones, digital cameras, portable

media players, and navigation devices. I also know the Devices are capable of connecting to the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who

used them, and when.

d. The process of identifying the exact electronically stored information on a storage

medium that is necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer is

evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of

the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who

used it, and when, sometimes it is necessary to establish that a particular thing is

not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices

consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the device to human inspection in order to determine whether it is evidence

described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine

Devices already in law enforcement's possession, the execution of this warrant does not involve

13

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

26.     For the reasons detailed above, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Robert M. Buzzard
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on November 15, 2019;

_____
UNITED STATES MAGISTRATE JUDGE

14

<u>**ATTACHMENT A**</u>

The property to be searched are fourteen electronic devices, hereinafter listed as

**DEVICE-1** through **DEVICE-14**. The Devices are currently located at the Dayton Resident

Office of the FBI, 7747 Clyo Rd., Centerville, Ohio and further described as follows:

      a.  **DEVICE-1:** Apple iPad, Model A1954, Serial Number GG7YK2P1JMXJ,

          contained within an Otter Box protective case.

      b.  **DEVICE-2:** Apple iPhone, Model A1549, IMEI: 355790074427672, contained

          in black protective case.

      c.  **DEVICE-3:** Samsung Galaxy Note 8 cellular telephone, Serial Number

          R38JA0LTZSB, IMEI: 358502083742034, with protective Pelican case.

      d.  **DEVICE-4:** Apple iPhone, black in color, contained in a black Otter Box case.

      e.  **DEVICE-5:** Apple iPhone, black in color, Model A1660, FCC ID: BCGE3085A,

          IC: 579C-E3085A, contained in blue/black protective case.

      f.  **DEVICE-6:** Apple iPhone, black in color, Model A1661, FCC ID: BCGE3087A,

          IC: 579C-E3087A, contained in blue protective case.

      g.  **DEVICE-7:** Apple iPhone, yellow in color, contained in clear protective case.

      h.  **DEVICE-8:** Apple iPhone, pink in color, Model A1662, IMEI:

          353790080191496, contained in black/gray protective case.

      i.  **DEVICE-9:** Apple iPhone, black in color, contained in black protective case.

j. **DEVICE-10:** Apple iPhone, pink in color, contained in black Otter Box protective case.

k. **DEVICE-11:** Apple iPhone, gray/black in color, Model A1453, IMEI: 352000068350267.

l. **DEVICE-12:** LG black flip cellular telephone, Model LG-VN170, Serial Number 607CQDG1826650.

m. **DEVICE-13:** Apple iPhone, pink/white in color, contained in a black protective case.

n. **DEVICE-14:** Samsung Galaxy Note 8 cellular telephone, IMEI: 353639090564616, contained in black protective case.

(collectively, the "Subject Devices").

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Subject Device described in Attachment A that relate to violations of: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime)  and Nathan GODDARD, Cahke CORTNER, Lionel COMBS III, and Courtney ALLEN involving since January 2019 through the present, including:

     a.   lists of customers and related identifying information;

     b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     d.   any information related to customers for drugs (including names, addresses, phone numbers, or any other identifying information);

     e.   any information identifying other individuals who participate in the sale, distribution or acquisition of drugs with Nathan GODDARD, Cahke CORTNER, Lionel COMBS III, and Courtney ALLEN;

     f.   information relating to the use, possession, or acquisition of firearms, ammunition, or other weapons;

g.  information relating to the use or threatened use of violence in connection with the drug trade;

h.  information relating to bulk cash, jewelry, automobile or other common proceeds of the drug trade;

i.  any information recording schedules or travel from January 2019 to the present;

j.  all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, browsing history, and social media accounts.

2

ATTACHMENT C

The search is related to violations of:

21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances);

21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime);

21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances);

21 U.S.C. § 856 (maintaining a drug premises); and

18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime)